**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 08-60296-Civ-COOKE/TURNOFF**

ZAKI KULAIBEE ESTABLISHMENT,

      Plaintiff

vs.

HENRY H. McFLICKER, *et al.,*

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER is before me on Defendants' Motion For Partial Summary Judgment (ECF No. 384). The Parties have fully briefed this motion, and I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons explained below, the Defendants' Motion for Partial Summary Judgment is granted in part and denied in part.

**I. BACKGROUND**

This action concerns a dispute over the parties' duties, obligations, and performance under a consignment agreement and a settlement agreement. Plaintiff, Zaki Kulaibee Establishment ("ZKE"), is a corporation of the Kingdom of Saudi Arabia that buys and sells aircraft and heavy equipment and parts for resale. Defendants are individual Florida residents and Florida corporations in the business of selling such inventory to end users or intermediaries. Defendant entities are: Airspares Network, Inc. ("Airspares"); Daytona Aerospace, Inc. ("Daytona"); Riverside Enterprises USA, Inc. ("Riverside"); B.C. Inventories, Inc. ("B.C. Inventories"); Thunderbird Aviation, Inc. ("Thunderbird"); Aircraft Logic Systems, Inc. ("Aircraft Logic"); Joseva Enterprises, Inc. ("Joseva"); Aerospace Parts Network, Inc., a/k/a

Aerospace Parts Manufacturing, Inc. ("Aerospace Parts"); and DAI, LLC (DAI).  The individual

defendants are Florida residents who were or are officers or directors at the defendant entities, as

follows:  Henry H. McFlicker (former or current officer and/or director at Airspares, B.C.

Inventories, Joseva, and DAI); Joe Persaud (former or current officer and/or director at

Airspares, Daytona, B.C. Inventories, Aircraft Logic, Joseva, Aerospace Parts, and DAI);

Shammie "Bebe" Persaud (former or current officer and/or director at Airspares, Daytona,

Aerospace Parts, and DAI).[1]

On June 17, 2003, Plaintiff entered into a Consignment Sales Agreement ("CSA") with

Defendant Airspares Network, Inc. ("Airspares").  The CSA provided that ZKE would consign

to Airspares approximately 150,000 line items of products consisting of approximately 5,000,000

parts for U.S. aircrafts.  CSA, Exh. A.

The CSA set forth the Airspares's duties, including:  (i) hold all unsold goods in trust for

ZKE for the sole purpose of selling it; (ii) secure, store, and insure ZKE's goods separately in its

warehouses and to name ZKE as an additional insured on any insurance policy; (iii) provide a

statement of goods on hand to ZKE upon request; (iv) pay all rent for storage of ZKE's goods

and to forego charging any sales taxes for storage; (v) allow ZKE to inspect the goods upon

reasonable notice; (vi) use its best efforts to promote and sell ZKE's goods at no less than the

minimum sales price agreed to by the parties or at fair market value; (vii) make all sales to

customers in Airspares's name; (viii) pay ZKE 50% of all proceeds from the sale of ZKE's

goods; (ix) provide a sales report every month to ZKE for the preceding month; (x) keep records

of all sales of ZKE's goods and allow ZKE or its representative to inspect books and records of

all sales made; (xi) allow ZKE to visit Airspares's offices, upon reasonable notice, to conduct an

---

[1] To the extent that Defendants treat all of the defendant individuals and entities together as one in their motion, I have done the same.  Where Defendants set out arguments regarding particular defendants, I

audit of reports and records relating to ZKE's goods; (xii) provide sales and inventory reports as requested, but no more frequently than every month; and (xiii) pay to ZKE 50% of all monies collected by Airspares for insurance claims on ZKE's goods above $1,000,000. *See* CSA § 4.

The initial term of the CSA was five years, which the parties could renew for consecutive terms of one year. CSA § 8(a). After the initial term, either party could terminate the agreement upon ninety days' written notice. CSA § 8(b).

The parties agree that in the summer of 2003, ZKE shipped three lots of products to Airspares. Third Am. Compl. ¶ 61 (hereafter, "Compl."). ZKE claims that Airspares violated the CSA by (i) attempting to charge ZKE for security at the warehouse; (ii) failing to provide ZKE with sales reports or other documents for several months during the contractual period; and (iii) engaging in improper or sham sales transactions. Compl. ¶¶ 66-68.

The business relationship between the parties fell apart and ZKE decided to send a new lot of products to a different consignee. Compl. ¶ 72. Airspares sued the consignee in California State court to replevy this lot of products, and started arbitration proceedings against ZKE in Miami, Florida. Compl. ¶¶ 73, 74.

On November 26, 2004, ZKE and Airspares entered into a Settlement and Release Agreement, Stipulation of Dismissal of Arbitration and Reaffirmation of the Consignment Agreement ("Settlement Agreement"). Compl. ¶ 75. Among other things, the Settlement Agreement reaffirmed the terms of the CSA. Settlement Agmt. ¶ 3.

According to ZKE, Airspares continued to violate the CSA and the Settlement Agreement. Compl. ¶ 78. In specific, ZKE states that Airspares and its affiliates failed to provide monthly sales reports and inventory reports to ZKE; removed inventory from the warehouse without purchase orders; co-mingled ZKE goods with other goods; failed to pay ZKE

---

have analyzed those arguments separately.

its share of proceeds; and failed to account for the disposition of sales and insurance proceeds. Compl. ¶ 79.  ZKE alleges that after hurricane Katrina struck South Florida, Airspares moved ZKE's goods to another warehouse in Weston, FL, without ZKE's approval, and began charging ZKE higher warehouse costs.  Compl. ¶¶ 83-84, 87.  According to ZKE, Airspares and its affiliates filed claims with insurance companies for damages caused by the hurricane and failed to share those proceeds with ZKE.  Compl. ¶¶ 89-93.  ZKE also alleges that while its goods were in the Weston warehouse, Airspares and its affiliates prevented ZKE from overseeing its goods or conducting an inventory of its goods, and failed to properly care for the goods.  Compl. ¶¶ 94-106.

Finally, ZKE claims that on July 18, 2006, it provided notice to Airspares of its intent to terminate the CSA.  Compl. ¶ 115.  ZKE claims that, despite the termination of the agreement, Airspares refused to return all of ZKE's consigned property.  Compl. ¶ 118.

ZKE brought this lawsuit for declaratory relief (Count I), accounting (Count II), breach of contract (Count III), unjust enrichment (Count IV), constructive trust (Count V), civil theft (Count VI), temporary and permanent injunction under Fla. Stat. 812.035(1) (Count VII), conversion (Count VIII), and violation of the Uniform Fraudulent Transfers Act (Count IX). Defendants seek summary judgment as to all of these claims except Count I.

## II. LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U .S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

### A.  Count II – Accounting (Against all Defendants)

Under Florida law, a party that seeks an equitable accounting must show that:  (i) a fiduciary relationship exists between the parties or the transaction at issue is complex; and (ii) the remedy at law is inadequate. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071 (11th Cir. 2007). "In view of the powers given to District Courts . . . to appoint special masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it

5

will indeed be a rare case in which it can be met." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).  Generally, where a party may obtain a money judgment for breach of contract, it has an adequate remedy at law, which precludes the need to impose an equitable remedy.  *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) (citing *Mary Dee's, Inc. v. Tartamella,* 492 So. 2d 815, 816 (Fla. Dist. Ct. App.1986)).

Defendants point out that ZKE has asserted a cause of action for breach of contract against Airspares in this case.  ZKE argues that an accounting is necessary because it needs certain information that Defendants have failed to provide.  Although ZKE acknowledges that Airspares has provided some documents through discovery, it maintains that Airspares's responses to discovery were incomplete.  Additionally, ZKE argues that since certain transactions were unreported or underreported, the exact amount of money it is owed is unknown and can only be ascertained through an accounting.

Nothing in the record indicates why ZKE could not obtain the documents it needs through discovery.  ZKE's arguments are more appropriately grounds for a motion to compel, not for an equitable accounting.  *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc*., 694 F. Supp. 2d 1275, 1281 (S.D. Fla. 2010) ("Where a party has the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate.").

Finally, ZKE states that it needs an accounting because the transactions at issue are complex, as there are thousands of sales transactions involving large sums of money.  The existence of an extensive volume of transactions is insufficient to remove a case from the purview of a jury and require an accounting in equity.  *See id*. (dismissing claim for equitable accounting where party sought access to receivables showing third-party denials or underpayments of medical bills).

For these reasons, I find that ZKE does not meet the requirements under Florida law that would entitle it to an equitable accounting as to any of the defendants.[2]

### B.  Count III – Breach of Contract (Against Airspares)

Under Florida law, a plaintiff must establish the following elements in a breach of contract claim:  (1) the existence of a valid contract; (2) a material breach; and (3) damages resulting from the breach.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).  ZKE claims that Airspares committed several breaches of the CSA and Settlement Agreement.  Airspares argues that there are no genuine issues of material fact as to any of the alleged breaches, and this Court should hold that no breach of contract occurred and ZKE sustained no damages.  I will analyze each of ZKE's breach of contract allegations in turn.

### 1.  Failure to Pay Amounts Owed

First, ZKE alleges that Airspares breached the CSA and the Settlement Agreement when Airspares failed to pay to ZKE all amounts to which it is entitled under the CSA and the Settlement Agreement.  Compl. ¶ 143 (a).  Airspares argues that the undisputed facts show there are no unreported or underreported sales owing to ZKE.  Airspares points to Abdul Reahman Saud's deposition testimony where Mr. Saud specifically identifies unreported sales transactions.  Saud Dep. 38:12-19.  Mr. Saud is ZKE's corporate representative.  Airspares also points to various passages in Carl Fedde's deposition testimony where Mr. Fedde states that he did not observe any unreported or underreported sales figures in a limited data set he reviewed.  *See, e.g.*, Fedde Dep. 19:24-20:3.  Mr. Fedde is a forensic accountant.

---

[2] The fact that ZKE asserts a breach of contract claim only against Airspares, while the equitable accounting claim is against all the defendants does not change this result.  Defendants fail to meet the first element in a claim for an equitable accounting because, as noted above, the transactions are not sufficiently complex, and there is no evidence that any of the other defendants acted as fiduciaries for ZKE.  Thus, an action for equitable accounting against the other defendants similarly fails as a matter of law.

In contrast, ZKE provides Mr. Saud's affidavit where he specifically identifies several sales transactions that took place from May 2004 to April 2009 that ZKE claims were either unreported or underreported.  Saud Aff. ¶¶ 8-9.  The documents supporting Mr. Saud's statements, including invoices and purchase orders, are attached as exhibits to his affidavit. According to ZKE, these specific sales transactions were identified after a review of Defendants' business records obtained through discovery.  Saud Aff. ¶ 8. [3]

Airspares explains that under the Settlement Agreement, ZKE admitted it owed Airspares $1,275,000, and the parties agreed that any amounts owed to ZKE from the sale of consigned goods after November 26, 2004, would be applied toward this $1,275,000.  Indeed, the Settlement Agreement states that Airspares and ZKE "waive any claim to sales prior to April 1, 2004."  Settlement Agmt. ¶ 4(a).  A number of the sales transactions that Mr. Saud identifies in his affidavit as unreported or underreported, however, took place after November 2004, so they have not been waived.  Logic would dictate that any sales proceeds from unreported or underreported sales transactions were not properly applied toward the $1,275,000.

Finally, although the facts regarding ZKE's damages are perhaps imprecise, that fact alone may not bar recovery.  *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1243 (11th Cir. 2009) (stating that, under Florida law, "uncertainty as to the precise amount of the lost profits will not defeat recovery so long as there is a reasonable yardstick by which to estimate the damages").  ZKE's measure of damages may not be exact, but it would consist of the difference in the sales value reported to ZKE and the actual sales value or fair market value of the goods

---

[3] Defendants complain in several places in their motion for summary judgment that Mr. Saud did not identify these transfers earlier in discovery.  It may be that it was only upon an examination of all of the Defendants' evidence that these transfers were identified.  In any case, Defendants fail to provide any case law that establishes that a court cannot consider evidence presented under oath in the form of an affidavit because the affiant's conclusions based on the examination of the evidence produced in discovery are presented for the first time in response to a motion for summary judgment.

sold.  *See Managed Care Solutions, Inc.*, 694 F. Supp. 2d at 1280 n.6 (stating that, under Florida law, a non-breaching party in a breach of contract action is entitled to benefit-of-the-bargain damages, i.e., damages that would place the non-breaching party in the condition it would have been had the contract been performed and the breach not occurred).  ZKE has sufficiently demonstrated that genuine issues of material fact exist as to the amount Airspares owes, if any, as a result of alleged unreported and/or underreported sales transactions.

2.   Failure to Provide Documentation

ZKE claims that, in failing to provide all required documentation to ZKE, including sales reports, backup of sales reports, inventory reports, proof of insurance, copies of insurance policies, and documents related to insurance claims, Airspares breached the CSA and Settlement Agreement.  Compl. ¶ 143(b).  Indeed, Airspares admits in its Answer to ZKE's Third Amended Complaint that it and Daytona failed to provide any "sales reports and documentation" to ZKE since October 2008.  Answer ¶ 1 (admitting allegations in Compl. ¶ 120).

Airspares argues that ZKE has since been able to obtain these documents through discovery.  That is irrelevant to the question of whether an initial breach of contract occurred. Airspares also argues that ZKE has not demonstrated how it has been damaged by the alleged breach.  ZKE states that it has been damaged "by having to expend significant amounts in attorneys' fees" to obtain the documents.  Attorney's fees and costs may be granted as a remedial measure after a material breach occurs.  However, ZKE cannot point to any case law that establishes that attorney's fees and costs may serve as the sole basis for damages in a breach of contract action.

That is not to say that ZKE cannot recover any damages for this alleged breach of contract.  When a party establishes a breach of contract, it may receive an award of nominal

9

damages where there is "insufficient evidence presented to ascertain the particular amount of loss." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1327 (11th Cir. 1998); *see also Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. Dist. Ct. App. 2006) ("At least nominal damages are sustained at the time of a breach of contract.").  The prayer for relief in Count III of ZKE's Third Amended Complaint includes a request for compensatory damages, but also "such further relief as this Court deems just and proper."  As to this particular breach, summary judgment is granted in favor of ZKE as to the issue of liability,[4] but genuine issues of fact remain as to the measure of appropriate damages.

### 3.   Failure to Pay Out Insurance Proceeds

ZKE alleges that Airspares's failure to account for any insurance proceeds related to ZKE's goods, and failing to turn over ZKE's share of insurance proceeds breached the CSA and the Settlement Agreement.  Compl. ¶ 143(c).  Airspares concedes that "there is a dispute as to the amount of insurance proceeds that ZKE is entitled to," but argues that it did not breach the CSA and the Settlement Agreement because it applied the amount due to ZKE toward the $1,275,000 settlement amount.  Because there is a dispute as to the amount that ZKE is entitled to, summary judgment is denied.

### 4.   Failure to Notify of Theft of Goods

ZKE claims that Airspares' failure to notify ZKE of the theft of its property by Wally Tamimi, a former Airspares employee breached the CSA and the Settlement Agreement.  Compl. ¶ 143(d).  Airspares provides Mr. Persaud's affidavit as evidence that Airspares successfully sued Mr. Tamimi to recover the stolen goods.  Persaud. Aff. ¶ 17.  Mr. Saud admitted in his deposition that Airspares correctly sued the former employee.  Saud. Dep. 172:9-173:10.

---

[4] A court may enter summary judgment in favor of the non-moving party "where a legal issue has been fully developed, and the evidentiary record in complete." *See Artistic Entertainment, Inc. v. City of*

Further, Mr. Tamimi returned the goods.  Persaud Aff. ¶ 17.  ZKE does not claim that there was any damage to the goods.  In fact, ZKE does not provide any counter to these arguments made in the Defendants' Motion.  Thus, there is no genuine issue for trial with respect to this claim. Summary judgment is granted as to this allegation, and it is dismissed.

5.   Move of ZKE's Goods to New Warehouse without Authorization

ZKE alleges that Airspares breached the CSA and the Settlement Agreement by moving ZKE's goods from a warehouse in Deerfield Beach to a military warehouse and a warehouse in Weston, FL, without authorization or notice to ZKE.  Compl. ¶ 143(e).  Neither party points to what section of the CSA Airspares breached by moving goods without notifying ZKE.  The CSA provides that if Airspares "desires or contracts to purchase a warehouse to house the Consigned Goods in its possession ("Warehouse Purchase"), it shall notify [ZKE] in writing" and give ZKE the option of becoming a fifty percent partner in the purchase or not participate in the purchase. CSA § 15.  ZKE has made no allegation, nor has it presented any evidence, that Airspares made a warehouse purchase without providing ZKE with the option of buying in.   Because Airspares did not breach a contract provision by merely moving the goods, this claim is dismissed.

6.   Inflated Warehouse and Moving Costs

ZKE contends that Airspares charging ZKE inflated warehouse and moving costs without authorization or notice breached the CSA and the Settlement Agreement.  Compl. ¶ 143(f).  Airspares states that ZKE has not identified any warehouse or moving costs that Airspsares charged without authorization or notice.  In his deposition, Mr. Saud asserts that ZKE did not have to pay any warehouse or moving expenses, so each and every warehouse and moving cost charged by Airspares was necessarily charged without authorization or notice.  Saud Dep. 209:25-210.  Airspares does not provide any evidence to show that it was not required to

_Warner Robins_, 331 F.3d 1196, 1202 (11th Cir. 2003).

cover all warehousing costs or that it did not charge those costs to ZKE.  Genuine issues of material fact exist with respect to this claim.  Summary judgment is denied.

7.  <u>Possession, Sale, and Control of ZKE Goods by other Defendants and Sham Transactions</u>

ZKE claims that Airspares breached the CSA and the Settlement Agreement by allowing Daytona and/or other defendant entities to possess, sell, and control ZKE's goods, and to engage in "sham" transactions, including sales among themselves at artificially reduced prices, only to turn around and re-sell the items to end users at higher prices.  Compl. ¶ 143(g).  The CSA provides that "Airspares is also free to enter into contracts with sub-consignors and other entities to assist in the sale of the Consigned Goods."  CSA § 14(a).  The Settlement Agreement also authorizes other entities to sell ZKE's goods.  *See* Settlement Agmt. § 4(b)(4) ("When Airspares sells goods to an Affiliated Entity (i.e., Daytona Aerospace, Riverside, Aircraft Logic, B.C. Inventories or Thunderbird Aviation . . . .").  ZKE does not dispute Airspares's arguments on this issue.  Summary judgment is therefore granted as to the claim that Airspares breached the CSA and the Settlement Agreement by allowing Daytona and/or other defendant entities to possess, sell, and control ZKE's goods.  This claim is dismissed.

As to the second part of the claim—that Airspares allowed other defendant entities to engage in "sham" transactions—Airspares denies ZKE's allegations and argues that it complied with the CSA and the Settlement Agreement because it reported sales at the price at which goods were sold to the end user.  Airspares also argues that ZKE has not specifically identified any unreported and underreported sales transactions.

There is no dispute that the CSA and the Settlement Agreement requires Airspares to report sales at the price at which it or its intermediaries sold goods to the end user.  Settlement Agmt. § 4(b)(4).  ZKE presents evidence, however, to indicate there is a genuine issue of

material fact as to whether Airspares unreported or underreported sales.  *See* discussion *supra* at II.B.1.  ZKE has established that material issues of fact exist as to this claim, which preclude summary judgment.

### 8.   Theft of ZKE Goods

ZKE alleges that Airspares's theft of ZKE's goods after ZKE's on-site representative made demand their return breached the CSA and the Settlement Agreement.  Airspares's entire argument as to this allegation is:  "This allegation is based upon ZKE's on-site representative observing the movement of ZKE's goods; but he does not know what happened to them and never asked Airspares/Daytona's management where these goods went."  Def.'s Mot 14.  Airspares cites to Manjit Chahal's deposition testimony.  Mr. Chahal was ZKE's on-site representative at Airspares's warehouse.  Mr. Chahal testified that he was at the warehouse on a non-working day and saw an Airspares employee taking several parts out of the warehouse.  Chahal Dep. 100:3-17.  Mr. Chahal asked the employee for the purchase orders for each of the parts and the employee said he did not know where they were.  *Id*.  Mr. Chahal testified that he believed the employee stole the parts.  Chahal Dep. 100:21-101:13.  Airspares has not met its initial burden to show that there are no genuine issues of material fact for a jury.  Mr. Chahal's deposition shows that there are disputed facts surrounding whether Airspares breached the CSA and the Settlement Agreement by stealing ZKE's goods.  Summary judgment is denied as to this claim.

### 9.   Failure to Return ZKE Goods after Contract Termination

Finally, ZKE contends that Airspares's failure to return ZKE's property upon the expiration of the CSA and continuing to control and sell ZKE's property breached the CSA and the Settlement Agreement.  Compl. ¶ 143(i).  Airspares points to Section 14(b) of the CSA,

which provides that ZKE could sell any of its consigned goods pursuant to the CSA and share 50% of the sales proceeds with Airspares.  It argues that ZKE could have chosen to sell the goods Airspares was warehousing at any time, but failed to do so.

ZKE contends that section 14(b) of the CSA is inapplicable to this situation.  ZKE argues that it elected to terminate the contract and seek a return of its goods because, in that case, it could retain 100% of the profits, rather than splitting half with Airspares.  When the contract was terminated, and ZKE provided timely written notice of termination, Airspares was required to return the goods to ZKE.  *See* CSA § 4(f) ("If [ZKE] desires after the Initial Term that Airspares return all or substantially all unsold Consigned Goods in its possession it may only do so by terminating this Agreement pursuant to Section 8(b) hereof.").  Section 8(c) of the CSA, however, states that in the event of any termination of the CSA, Airspares may, at its sole option, choose to either (i) sell any Consigned Goods on hand and unsold pursuant to the terms and conditions of the CSA, or (ii) return any such Consigned Goods to ZKE at ZKE's expense.

As to this issue, there appears to be no genuine of material fact regarding the contract termination.  ZKE provided timely written notice of termination under Section 8(b).  On June 14, 2006, ZKE sent a letter to Airspares notifying it of the termination of the CSA and demanding the return of its goods upon the expiration of the initial term of the CSA.  *See* Exh. A to Saud Aff.  On June 18, 2006, Airspares sent a letter to ZKE acknowledging the termination.  *Id*.  On June 18, 2008, the CSA expired.

However, the terms of the contract—and, more specifically, which terms prevail here— appear to be in conflict.  Under section 8(c), at the termination of the contract, Airspares can *choose* to either return the goods or sell them.  This provision renders section 4(f), which mandates the return of the goods, meaningless.  *Cf. NAACP, Jacksonville Branch v. Duval Cnty.*

*Sch.*, 273 F.3d 960, 979 (11th Cir. 2001) (quoting Restatement (Second) of Contract § 203(a) to explain that, in interpreting a contract, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").  Under Florida law, "[w]hen the terms of a written instrument are disputed and rationally susceptible to more than one construction, an issue of fact is presented which cannot be properly resolved by summary judgment."  *Chhabra v. Morales*, 906 So. 2d 1261, 1262 (Fla. Dist. Ct. App. 2005).  Because the terms of the CSA are rationally susceptible to more than one construction, summary judgment is not proper.

### C.  Unjust Enrichment (Against all Defendants)

ZKE asserts claims of unjust enrichment against all of the defendants in this case.  ZKE alleges that "[b]y surrendering possession and control of its goods to [Airspares], and the other defendants, and through the sales of ZKE's goods and the retention of the proceeds of sales from these goods, including sales within the affiliated entity defendants, ZKE conferred a benefit upon the defendants."  Compl. ¶ 146.

To prevail on a cause of action for unjust enrichment, a plaintiff must establish that: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  *Hillman Constr. Co. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994).

"[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."  *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007).  A contract exists between Airspares and ZKE relating to the same inventory that is subject to the unjust enrichment claim.  It is

undisputed that ZKE conveyed the goods at issue to Airspares pursuant to the CSA.  The terms of the CSA govern the treatment of those goods in the event of the termination of the contract. The claim for unjust enrichment against Airspares therefore fails as a matter of law.

Defendants argue that ZKE cannot assert unjust enrichment claims against the other defendants because ZKE did not confer a direct benefit upon them.  *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007).  It is undisputed that Airpares sold ZKE's goods to end users through intermediaries, i.e., the other defendant entities.  ZKE has presented evidence to support its claim that Airspares allegedly made sales transactions to defendant entities for a low price and the defendant entities resold the parts for a higher price to the end user.  *See* discussion, *supra* III.B.1.  If ZKE's allegations are true, the defendant entities were directly benefitted by receiving higher profits earned as a result of the unreported or underreported sales.  Therefore, while there may have been no direct contact between ZKE and the defendant entities in the form of a contractual relationship, there are genuine issues of material fact as to whether ZKE directly conferred a benefit to them in the form of wrongfully obtained higher profits.  *See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) ("Whether [defendants] did or did not receive a direct benefit from Plaintiff is a question of fact . . . .") (citing *Romano v. Motorola, Inc.*, No. 07-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007)).  For these reasons, summary judgment is denied as to the other defendants.

### D.  Count V – Constructive Trust (Against all Defendants)

ZKE asserts a claim of constructive trust against all of the defendants in this action.  A constructive trust is an equitable remedy imposed where there has been a wrongful taking of the property of another.  *Abele v. Sawyer*, 750 So. 2d 70, 74 (Fla. Dist. Ct. App. 1999).  The

elements necessary for imposing a constructive trust are:  "(1) a promise, express or implied; (2)

a transfer of property and reliance thereon; (3) a confidential relationship; and

(4) unjust enrichment."  *Id.*

Because an adequate remedy at law exists as to Airspares (its breach of contract claim),

ZKE's equitable claim for a constructive trust against it fails as a matter of law.  *See Garcia v.*

*Santa Maria Resort, Inc*., 528 F. Supp. 2d 1283, 1296-97 (S.D. Fla. 2007); *Ocean Commc'ns,*

*Inc.*, 956 So. 2d at 1225.

As to the other defendants, ZKE argues that a claim for a constructive trust applies

because the promises, transfer of goods, and confidential relationship it had with Airspares

through the CSA and the Settlement Agreement can be extended to the other defendants due to

their "affiliated status with Airspares."  Pl.'s Response 15.  ZKE cites no case law that would

support such an extension of the equitable remedy of constructive trust, nor have I found any.

Generally, a "litigant who fails to press a point by supporting it with pertinent authority, or by

showing why it is sound despite a lack of supporting authority or in the face of contrary

authority, forfeits the point. The court will not do his research for him."  *Phillips v. Hillcrest*

*Med. Ctr.,* 244 F.3d 790, 800 (10th Cir. 2001) (internal quotation omitted).  ZKE fails to provide

any evidence to satisfy the elements required to establish an equitable claim for a constructive

trust against defendants.  *See Henderson v. Carnival Corp*., 125 F. Supp. 2d 1375, 1376 (S.D.

Fla. 2000) ("The failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial and requires the court to grant the motion for

summary judgment"); *Hall v. Burger King Corp*., 912 F. Supp. 1509, 1526 (S.D. Fla. 1995)

(dismissing claim on summary judgment because of plaintiff's "complete lack of proof"

proffered in support of claim).  Summary judgment is granted as to this claim, and it is dismissed

as to all of the defendants.

**E.   Count VI – Civil Theft (Against All Defendants) and Count VII – Temporary and Permanent Injunction (Against all Defendants)**

ZKE asserts a claim for civil theft pursuant to Fla. Stats. §§ 812.014 and 772.11, against all of the defendants, which occurred "through the theft of ZKE's goods and the transfer of goods to the Margate Warehouse and Military Trail Warehouse" and "through the continued possession and sale of ZKE's goods even after demand has been made for their return pursuant to the CSA." Compl. ¶ 158.

Under Fla. Stat. § 812.014, a person commits theft "if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) deprive the other person of a right to the property or a benefit from the property; [or] (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

First, Defendants argue that the economic loss rule bars this claim against Airspares because the CSA and the Settlement Agreement already cover the conduct at issue. ZKE counter argues that the existence of a contractual relationship does not preclude an action for civil theft where the evidence indicates a scheme of deceit and theft.

The economic loss rule is a judicially created doctrine that precludes certain tort actions where the only damages suffered by the plaintiff are economic losses. *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc*., 891 So. 2d 532, 536 (Fla. 2004). The rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Id*. Thus, "a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id*. (citing *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co*., 482 So. 2d 518, 519 (Fla. Dist. Ct. App. 1986)). There are certain exceptions where

a tort action will lie despite the existence of a contract. "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breach the contract." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996). "Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft.'" *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. Dist. Ct. App. 2000) (quoting *Trend Setter Villas of Deer Creek v. Villas on Green*, 569 So. 2d 766, 767 (Fla. Dist. Ct. App. 1990)).

ZKE has alleged that Defendants engaged in a scheme of not reporting or underreporting sales transactions to deceive ZKE. Whether this exception to the economic rule applies depends on the disputed facts of the case, and should be decided by a jury. Defendants have not met their initial burden to show that there are no genuine issues of material fact with respect to ZKE's civil theft claim. Thus, summary judgment disposition of the Airspares claim is not proper.

Second, Defendants state that there is no evidence that any defendant was involved in the purported theft or non-contractual transfer of any of ZKE's goods. In support, Defendants cite two portions of Mr. Saud's deposition testimony—one in which Mr. Saud states that his lawyers would know better how DAI took ZKE's property, and another where Mr. Saud agrees that the only Airspares ever had possession, custody, or control of ZKE's goods.

ZKE points to the unreported and underreported transactions discussed above at Section III.B.1. Additionally, ZKE provides evidence that Mr. Saud learned, through speaking to several Daytona employees, that Daytona sold ZKE's parts in place of Daytona's parts. Saud Aff. ¶13(b).[5] Airspares credited Daytona with such sales. *Id.* ZKE also presents evidence that

---

[5] Defendants argue that these statements amount to inadmissible hearsay, which a court cannot consider in deciding a motion for summary judgment. In *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, the Eleventh Circuit held that a court may consider evidence submitted by a non-moving party in opposition to a motion for summary judgment even if such materials would have been

Mr. Tamimi, a former Daytona employee, testified that he understood, based on conversations he heard, that Daytona was modifying sales reports it issued to ZKE.  Tamimi Dep. pp. 120-121. ZKE has presented specific facts that show there is a genuine issue for trial with respect to its civil theft claim against the other defendants.  Summary judgment is denied.

As to Count VII, Defendant's position is that, since ZKE's civil theft claim fails, there is no basis for an injunction against Defendants.  Because I find that ZKE's civil theft claim against Defendants cannot be disposed on summary judgment, ZKE's claim for temporary and permanent injunctions will also survive.

### F.  Count VIII – Conversion (Against all Defendants)

ZKE alleges that Defendants committed the tort of conversion by "(a) wrongfully commingling ZKE's aircraft parts with non-ZKE property; (b) selling ZKE's aircraft parts to affiliated entities at a discount, and not to bona fide purchasers in arms-length transactions; (c) taking ZKE's goods from various warehouses, over the objections of ZKE's representative, and without providing subsequent information regarding the goods; and (d) liquidating certain of the parts through sale, and then retaining proceeds due to ZKE."  Compl. ¶ 173.

Under Florida law, the tort of conversion is "an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it."  *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990).  "Neither an obligation to pay money nor a breach of contract generally give rise to a claim of conversion in tort."  *Id*.  "Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."  *Ginsberg v. Lennar Fla. Holdings, Inc*., 645 So. 2d 490, 494 (Fla. Dist. Ct. App. 1994).  Therefore, "when the parties are in privity, contract principles are

---

inadmissible at trial.  2 F.3d 1514, 1530 (11th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 319, 324 (1986)).

generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *See Indemnity Ins. Co. of N. Am.*, 891 So. 2d at 536-37.

ZKE bases its claim for conversion against Airspares solely on breaches of the CSA and the Settlement Agreement. The damages sought by ZKE constitute economic losses that are more appropriately considered under contract principles. Thus, as a matter of law, the economic loss rule bars ZKE's conversion claim against Airspares.

Next, Defendants argue that ZKE cannot assert, as a ground for its conversion claim, that Defendants "intentionally damag[ed] or destroy[ed] ZKE's property." Defendants note that conversion requires the "refusal to surrender property," not merely the destruction or damage of property. ZKE provides no response to this argument. As such, this ground for conversion is dismissed. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("When a properly supported summary judgment motion has been made Fed. R. Civ. P. 56(e) provides that 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.'").

Defendants also argue that there is no evidence to establish that any defendant other than Airspares ever possessed any of ZKE's goods, so ZKE's conversion claim should be dismissed. Defendants cite several passages of Mr. Saud's testimony where Mr. Saud states that he does not know whether certain defendants ever had possession of ZKE's goods, and passages where Mr. Saud states that Airspares is the only entity that ever possessed ZKE's goods. *See, e.g.*, Saud

Aff. 115:1-5, 116:17-117:10, 245:9-13.

In response, ZKE provides evidence indicating that Airspares transferred the goods to other defendants, and other defendants resold ZKE's goods. *See* discussion *supra* III.B.1; Exh. D to Pl.'s Opp; *see also* Compl. ¶ 67.  Those defendants therefore had possession or control over ZKE's goods.  ZKE has presented specific facts that show there is a genuine issue for trial with respect to its conversion claim against all defendants except for Airspares; summary judgment is denied as to all defendants except Airspares.

Finally, Defendants state that ZKE has not provided evidence of its exact measure of damages under this claim.  The measure of damages in a claim for conversion is generally the fair value at the time and place of the conversion, plus interest.  *Christopher Adver. Grp., Inc. v. R & B Holding Co., Inc*., 883 So. 2d 867, 871 (Fla. Dist. Ct. App. 2004).  "The damage rules must be flexibly applied so as to provide fair compensation under the circumstances of the specific case."  *Id*.  As this requires a factual inquiry, it is more appropriate for a jury to decide the amount of damages warranted, if any, under this claim.

### G.  Count IX – Uniform Fraudulent Transfers Act (Against All Defendants)

ZKE asserts claims under four provisions of the Uniform Fraudulent Transfers Act ("FUFTA").  In its first allegation under FUFTA, ZKE claims that Defendants are liable under Fla. Stat. § 726.105(1)(a) for making transfers of ZKE property and of proceeds from the sale of ZKE's property "with actual intent to hinder, delay, and defraud ZKE."  Compl. ¶ 181.  To establish a cause of action under Fla. Stat. § 726.105, a plaintiff must show: "(1) there was a creditor to be defrauded, (2) a debtor intending fraud, and (3) a conveyance of property which could have been applicable to the payment of the debt due."  *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1229 (Fla. Dist. Ct. App. 2002).

Defendants state that there is no evidence that certain of the defendants (i.e., Henry H. McFliker, Joe Persaud, Shammie "Bebe" Persaud, B.C. Inventories, Aircraft Logic, Joseva, and DAI, LLC) ever possessed ZKE's goods.  As to those defendants that engaged in the transfer of goods (Riverside and Thunderbird), Defendants argue that ZKE authorized the transfers by signing the Settlement Agreement, which provides that Airspares would sell goods through certain affiliated entities, including Riverside and Thunderbird.  Defendants state that they properly accounted for all sales.

ZKE provides evidence of specific transactions that Airspares allegedly sold but did not report to ZKE, and transactions that Airspares allegedly sold to defendants B.C. Inventories and Riverside and underreported to ZKE.  Saud Aff. ¶¶ 8, 9; Exh. F to Pl.'s Opp.  ZKE also presents evidence to indicate that Daytona allegedly modified sales reports issued to ZKE at the request of Bebe Persaud, and that Mr. McFliker and Joe Persaud requested that purchasers submit two purchase orders at different prices so that Airspares could report the lesser-priced purchase order to ZKE.  Saud Aff. ¶¶ 13c; Tamimi Dep. pp. 120-121. ZKE also presents evidence of transfers of ZKE goods between Airspares and other defendant entities.  Exh. D to Pl.'s Opp; *see also* Compl. ¶ 67.

Defendants' argument that the Riverside and Thunderbird transactions were authorized pursuant to the Settlement Agreement is inapposite.  ZKE's claim is that the transactions were fraudulent, and thus the parties' contract could not authorize them.  ZKE has shown that genuine material facts exist as to its FUFTA claim under Fla. Stat. § 726.105(1)(a).

ZKE alleges that Defendants are liable under Fla. Stat. 726.105(1)(b) because Defendants made certain transfers of ZKE property and proceeds from the sale of ZKE's property "without a reasonably equivalent value in exchange for the transfer or the obligation."  Compl. ¶ 183.  ZKE

also claims that Defendants are liable under Fla. Stat. § 726.106(1) because Defendants transferred ZKE's property and the proceeds of ZKE's property, or incurred obligations at a time when ZKE already had claims against defendants." Compl. ¶ 184.

Both of these claims require that plaintiff show that defendants made transfers "without a reasonably equivalent value in exchange for the transfer or obligation." Fla. Stats. §§ 726.105(1)(b), 726.106(1). Defendants argue that ZKE was unable to identify, during the discovery period, which of the defendants participated in the transfers. Defendants thus conclude that such transfers never occurred. ZKE again points to the unreported and underreported transactions discussed above at Section III.B. ZKE has sufficiently demonstrated that issues of material fact exist as to this claim; summary judgment is denied.

Finally, ZKE alleges that Defendants are liable under Fla. Stat. § 726.106(2) for transferring ZKE's property and the proceeds of ZKE's property "at a time when ZKE already had claims against [the Defendants]" and Defendants made these transfers "to insiders for an antecedent debt at a time when [Airspares] was insolvent and the insiders had reasonable cause to believe [Airspares] was insolvent." Compl. ¶¶ 186, 187. ZKE fails to provide any evidence that raises a genuine issue of material fact as to whether any of the defendants made transfers for an antecedent debt. *See Henderson*, 125 F. Supp. 2d at 1376 ("The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment"); *Hall*, 912 F. Supp. at 1526 (dismissing claim on summary judgment because plaintiff's "complete lack of proof" proffered in support of claim). Because ZKE has failed to provide any evidence establishing an essential element of this claim, summary judgment is granted. This claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Count II (Accounting Claim Against All Defendants) is dismissed as to all defendants. Summary judgment is **GRANTED**.

2. Count III (Breach of Contract Claim Against Airspares):

    a. The claim based on a failure to pay amounts owed (Compl. ¶ 143(a)) remains. Summary judgment is **DENIED**.

    b. The claim based on a failure to provide documentation (Compl. ¶ 143(b)) remains, in part. Airspares is liable, but Summary judgment is **DENIED** on the issue of damages.

    c. The claim based on a failure to pay out insurance proceeds (Compl. ¶ 143(c)) remains. Summary judgment is **DENIED**.

    d. The claim based on a failure to notify ZKE of the theft of goods by Wally Tamimi (Compl. ¶ 143(d)) is dismissed. Summary judgment is **GRANTED**.

    e. The claim based on moving ZKE's goods to a new warehouse without authorization (Compl. ¶ 143(e)) is dismissed. Summary judgment is **GRANTED**.

    f. The claim based on inflated warehouse and moving costs (Compl. ¶ 143(f)) remains. Summary judgment is **DENIED**.

    g. The claim based on Airspares allowing other defendants to possess, sell, and control ZKE goods (Compl. ¶ 143(g)) is dismissed. Summary judgment is **GRANTED**.

    h. The claim based on Airspares allowing other defendants to engage in sham transactions (Compl. ¶ 143(g)) remains. Summary judgment is **DENIED**.

    i. The claim based on the theft of ZKE's goods (Compl. ¶ 143(h)) remains.

Summary judgment is **DENIED**.

          j.  The claim based on the failure to return ZKE goods after contract termination (Compl. ¶ 143(i)) remains.  Summary judgment is **DENIED**.

      3.  Count IV (Unjust Enrichment Claim Against All Defendants) is dismissed as to Airspares, but remains as to the other defendants.  Summary judgment is **DENIED in part and GRANTED in part**.

      4.  Count V (Constructive Trust Claim Against all Defendants) is dismissed as to all defendants.  Summary judgment is **GRANTED**.

      5.  Count VI (Civil Theft Claim Against all Defendants) remains as to all defendants.  Summary judgment is **DENIED**.

      6.  Count VII (Temporary and Permanent Injunction Against all Defendants) remains as to all defendants.  Summary judgment is **DENIED**.

      7.  Count VII (Conversion Claim Against all Defendants) is dismissed as to Airspares, but remains as to the other defendants.  Summary judgment is **DENIED in part and GRANTED in part**.

      8.  Count IX (FUFTA Claims Against all Defendants):

          a.  The claim under Fla. Stat. § 726.105(1)(a) remains as to all defendants.  Summary judgment is **DENIED**.

          b.  The claim under Fla. Stat. § 726.105(1)(b) remains as to all defendants.  Summary judgment is **DENIED**.

          c.  The claim under Fla. Stat. § 726.106(1) remains as to all defendants.  Summary judgment is **DENIED**.

          d.  The claim under Fla. Stat. § 726.106(2) is dismissed as to all defendants.

Summary judgment is **GRANTED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 25th day of April 2011.


*Marcia G. Cooke*

MARCIA G. COOKE
United States District Judge


Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*